### IN THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: Subpoena to Perkins Coie LLP, in the matter of *Steve Snyder-Hill, et al. v. The Ohio State University* (S.D. Ohio 2:18-cv-00736-MHW-EPD) | Case No.:  2:19-mc-00038-MHW-EPD<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Elizabeth Preston Deavers<br><br>Judge Michael R. Barrett (Settlement) |

**NON-PARTY PERKINS COIE LLP'S REPLY IN SUPPORT OF ITS
MOTION TO QUASH PLAINTIFFS' SUBPOENA**

In response to Plaintiffs' renewed effort to avoid having to engage in their own litigation fact development by improperly piggybacking on non-party Perkins Coie LLP's significant—and *privileged and confidential*—work to investigate allegations regarding former OSU team physician Richard Stress, Perkins Coie submits this Reply in Support of Its Motion to Quash Plaintiffs' Subpoena.[1] As established both in this Reply and in Perkins Coie's opening Motion, (1) Plaintiffs' unilateral decision to wait nearly a year to file a limited response to Perkins Coie's Motion to Quash, (2) the work product doctrine, and (3) the attorney-client privilege doctrine each provide independently sufficient grounds for granting Perkins Coie's Motion in its entirety.

## PROCEDURAL HISTORY

Perkins Coie's Motion to Quash, Dkts. 1–2 & 19 (the "Motion" or "Mot."), contains a comprehensive overview of the facts giving rise to this dispute, which Perkins Coie will not restate in this Reply. Much has happened procedurally in the four years since July 2019, when Perkins Coie properly and timely filed its Motion. For purposes of the Reply, however, we limit ourselves to summarizing the relevant procedural history surrounding Perkins Coie's Motion.

### A.    June 2019: Plaintiffs Serve Omnibus Subpoena on Non-Party Perkins Coie

In June 2019, counsel for Plaintiffs in *Snyder-Hill, et al. v. The Ohio State University*, Case No. 2:18-cv-00736 (S.D. Ohio), served a subpoena duces tecum on non-party Perkins Coie seeking documents responsive to eleven broad requests, *de facto* encompassing all documents Perkins Coie generated in the context of its investigation into allegations that OSU team physician Dr. Richard Strauss, over decades, sexually abused OSU athletes and others, as well as Perkins Coie's follow-on report (the "Report").

On July 12, 2019, pursuant to Federal Rule of Civil Procedure 45(d), Perkins Coie moved to quash the subpoena, filing its Motion in the United States District Court for the Northern District of Illinois. Dkts. 1–2. With the parties' consent, on August 13, 2019, the Northern

---

[1] Much of the Opposition is based on a misunderstanding of who Perkins Coie's client was. *See* Opp. at 9 ("OSU retained Perkins Coie"). As detailed below, OSU hired *Porter Wright*, who hired Perkins Coie. At all relevant times, Porter Wright was Perkins Coie's only client.

District of Illinois transferred the Motion to the Southern District of Ohio, Dkt. 11, where the Motion was reassigned given its relation to the *Snyder-Hill* litigation, Dkt. 18. Plaintiffs unilaterally decided not to respond to the Motion. Given the change in venue, on October 9, 2019, Perkins Coie submitted a supplemental brief addressing Sixth Circuit Court of Appeals case law. Dkt. 19. Plaintiffs again decided against filing any response.

In November 2019, Perkins Coie sought a conference with this Court seeking direction concerning further briefing and scheduling. Dkt. 22. Plaintiffs objected to the request for a briefing schedule, asserting during the hearing that they "disagree[d] . . . that a formal briefing schedule is necessary; the specific information at issue is clearly discoverable and not subject to any privileges." Dkt. 24. On November 25, OSU moved to intervene in support of the Motion. Dkt. 29; *see* Dkt. 39 (granting OSU's motion).

### B.       June 2020: Plaintiffs File Untimely Response to the Motion to Quash

Nonetheless, nearly a *year* after the Motion was originally filed (and two months after the mediation stay was lifted in the underlying litigation), on June 15, 2020, Plaintiffs (without seeking leave from the Court) opted to finally file a 26-page opposition to the Motion. In their opposition, filed nearly a year after the Motion, Plaintiffs abandoned many of the requests in the Subpoena, electing instead to reframe the Subpoena as seeking only *four* categories of documents. Dkt. 35 (the "Opposition" or "Opp.") at 11[2] ("The Court should deny Perkins Coie's motion and order it to produce the four categories of information Plaintiffs now seek.").

On June 26, 2020, the Court granted Perkins Coie's renewed request for an informal discovery conference. Dkts. 37–38. During the conference the Court held the time for Perkins Coie to file a reply in support of its motion to quash in abeyance pending the scheduling of a status conference. *Id*. On July 10, 2020, the Court held a status conference, after which it issued an order staying the matter—including any reply briefing by Perkins Coie to the Opposition—pending resolution of OSU's motion to dismiss in the underlying litigation. Dkt. 45.

---

[2] All page numbers refer to the ECF numbering at the top of each stamped document.

4893-5103-9894.1

### C.      October 2021: The Court Moots Subpoena Following Dismissal of Complaint

On September 22, 2021, the Court granted OSU's motion to dismiss for failure to state a claim. No. 2:17-cv-00736, Dkt. 157. In turn, this Court on October 5, 2021 dismissed the present subpoena proceeding as moot. Dkt. 54. In the more than two years since the Court dismissed this case, Plaintiffs appealed the Court's order granting OSU's motion to dismiss in the underlying matter to the Sixth Circuit Court of Appeals. No. 2:17-cv-00736, Dkt. 160. Last fall, on September 14, 2022, the Sixth Circuit reversed this Court's order granting the motion to dismiss and remanded the case for further proceedings consistent with the appellate court's opinion. *Id.*, Dkt. 169. Before proceedings in the district court reopened, however, the Sixth Circuit stayed its mandate to allow OSU time to file a petition for a writ of certiorari with the Supreme Court, which it did on March 21, 2023. *Id.*, Dkts. 171–172. On June 26, 2023, the Supreme Court denied OSU's petition, and the Sixth Circuit remanded the underlying litigation. *Id.*, Dkt. 174.

### D.      June 2023: Plaintiffs Move to Reinstate Motion and Resume Briefing

On the same day the Supreme Court denied OSU's petition for a writ of certiorari, Plaintiffs filed a motion for a status conference and to reinstate the Motion. Dkt. 55. In response to Plaintiffs' request to reopen the Motion, Perkins Coie agreed that the Motion should be finally resolved, and requested the opportunity to complete briefing by submitting a reply in support of its Motion. Dkt. 56. On November 17, 2023, the Court granted Plaintiffs' request. Dkt. 70. Accordingly, Perkins Coie now submits this Reply.

## ARGUMENT

## I.      PLAINTIFFS' FAILURE TO TIMELY RESPOND CONSTITUTES A WAIVER.

Plaintiffs decided to take nearly a full year to respond to the Motion—well beyond the 21 days allowed by the local rules. S.D. Ohio Civ. R. 7.2(a)(2). And Plaintiffs' delay was not inadvertent or justified (indeed, Plaintiffs apparently did not think it was necessary to provide the Court with any justification). In a written submission to this Court in November 2019, over four months after Perkins Coie filed its Motion, Plaintiffs once again expressly and unilaterally *declined* to brief or otherwise provide a response on the merits, sharing their view that no formal

3

briefing was necessary because "the specific information at issue is clearly discoverable and not subject to any privileges." Dkt. 24 at 1. Ironically, Plaintiffs purportedly sought to expedite the process, yet decided to wait another seven months, until June 15, 2020, to file their Opposition.

Plaintiffs' exceptionally untimely response, which Perkins Coie now for the first time can raise, provides an independent reason for the Court to quash the Subpoena. *See Bartley v. Jenny Stuart Med. Ctr.*, No. 5:19-CV-00005-TBR, 2020 WL 854190, at *3 (W.D. Ky. Feb. 20, 2020) (granting motion to quash where plaintiff failed to respond to motion, thus waiving arguments in opposition); *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion").

## II.    BY LIMITING THE SCOPE OF THEIR SUBPOENA PLAINTIFFS ABANDON ALL OTHER CATEGORIES OF INFORMATION INITIALLY SOUGHT.

When Plaintiffs finally decided to respond to the Motion in June 2020 (nearly a year after Perkins Coie filed it), they failed to address the categories of documents sought in the Subpoena. Instead, they opted to reframe their request and expressly limited their Opposition to four buckets of information: "(1) the identity of OSU witnesses described in Perkins Coie's Report; (2) Perkins Coie's notes of communications with those witnesses; (3) its written communications with non-survivor OSU witnesses; and (4) OSU records which Perkins Coie uploaded into its electronic discovery database." Opp. at 10. By expressly revising their request to the four purportedly "narrow"[3] categories identified in their Opposition—and failing to address any other category of document originally requested in the Subpoena and disputed by the Motion— Plaintiffs necessarily waive any requests in the Subpoena that do not fall within these categories. That Plaintiffs have waived these requests is documented in Plaintiffs' statement to the Court that it should only consider the four categories outlined in its Opposition (Dkt. 48 at 7:4–7):

---

[3] Although Plaintiffs admit that the Subpoena is "far broader" than the four new categories, Opp. at 10, even Plaintiffs' revised requests—which include the identity of non-survivor witnesses and all notes and records of witness communications—could hardly be considered "narrow," as Plaintiffs suggest. Dkt. 48 at 7:24–8:3.

4

> THE COURT: So, from your perspective, then, your opposition is complete and those are the categories of documents that you want the Court to consider?
>
> [PLAINTIFFS' COUNSEL:] Correct, Your Honor.

Although these four categories, as noted, do not easily align to the eleven original categories in the Subpoena, Plaintiffs in their revised request have abandoned at least some of the originally requested items. For example, the four new categories do not include the distribution lists for President Drake's emails to former student athletes (Subpoena Item No. 5), nor (by Plaintiffs' own admission, *see* Opp. at 11) communications between OSU and Perkins Coie concerning the Report (Subpoena Item No. 7). Additionally, Plaintiffs have abandoned any request for documents related to survivors by expressly requesting only those communications with "non-survivor OSU witnesses." Opp. at 11, 15.

Plaintiffs also now do not dispute that the sensitive information they originally sought would violate the right to privacy for abuse survivors, including under federal and state law—an unopposed point Perkins Coie raised in both the Motion and supplemental briefing on Sixth Circuit case law. Mot. at 14–16; Supp. Mot. 19 at 12–13.

Plaintiffs additionally do not dispute the applicability of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, to the educational records sought in either their original or renewed categories of document requests for both survivors and non-survivor witnesses alike. *Id.* As set forth in Perkins Coie's Motion (at 14–15), disclosure of FERPA-protected records in response to a subpoena is permitted only if the institution makes a reasonable effort to notify the student of the subpoena in advance of compliance so that the student may seek "protective action." 34 C.F.R. § 99.31(a)(9)(ii). Impractically compelling non-party Perkins Coie's compliance with FERPA would impose an undue burden, providing the Court yet another independent basis to quash the Subpoena with respect to the covered records.

Plaintiffs did not push back against the FERPA argument, and it would have been futile to do so for the above reasons. But in any event, courts in the Sixth Circuit routinely hold that a party who fails to respond to an argument has waived any opposition to the same. *See, e.g.*,

*Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (affirming dismissal of breach of fiduciary duty claim where "motion to dismiss contended that . . . complaint did not state a claim for breach of fiduciary duties" and the opposition "did not address this argument," as such failure to do so "amounts to a forfeiture of the fiduciary-duty claim"); *Ohio Star Transp., LLC v. Roadway Express, Inc.*, No. 2:09-cv-00261, 2010 WL 3666982, at *3 (S.D. Ohio Sept. 14, 2010) (by failing to respond to argument raised in motion, plaintiff "waiv[ed] its ability to challenge the argument and effectively conced[ed] the point"); *Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005); *Wood v. U.S. Bank Nat'l Ass'n*, No. 5:17CV2234, 2019 WL 1255229, at *3 (N.D. Ohio Mar. 19, 2019). Such an outcome reflects sound public policy and fairness reasons and is contemplated by local rules. *See* S.D. Ohio Civ. R. 7.2(a)(2) ("Failure to file [an] opposition may result in the granting of any motion that would not result directly in entry of final judgment or an award of attorneys' fees.").

Further, Plaintiffs obliquely suggest that they may elect to revisit those portions of the Subpoena that they opted not to address in the Opposition.[4] But principles of fairness and judicial efficiency dictate that the entire Motion should be ruled on at once. After all, it has now been four and a half years since the Subpoena was served. Plaintiffs should be precluded from taking a piecemeal approach and revisiting their abandoned requests through additional briefing at some later time, particularly considering Plaintiffs' untimely Opposition and their agreement in open court that the Opposition included the "complete" categories of documents they wanted the Court to consider with request to the Motion. Dkt. 48 at 7:4–7.

III.    **THE WORK PRODUCT DOCTRINE PROTECTS THE IDENTITY OF AND COMMUNICATIONS WITH NON-SURVIVOR WITNESSES.**

Plaintiffs want to force Perkins Coie to reveal the names of and communications with the non-survivor OSU witnesses and medical personnel with whom Strauss worked or that the

---

[4] *See, e.g.*, Opp. at 3 ("[A]t this stage Plaintiffs are not seeking communications Perkins Coie had with OSU or OSU's appointed counsel."); *id.* at 23 ("Plaintiffs are not (at this juncture) seeking Perkins Coie's communication with OSU about the Report."); *id.* at 25 (noting that Plaintiffs have "narrow[ed] their original subpoena (at this stage)").

Report identified (by reference, not by name). Opp. at 15.

Plaintiffs do not dispute that the work product doctrine protects Perkins Coie's interview notes and memos. Nor can they—the case law is clear that notes of witness communications (e.g., interview memoranda) are classic opinion work product entitled to the highest level of protection. *See Hobart v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2017 WL 3668848, at *3 (S.D. Ohio Aug. 24, 2017) (protecting interview summaries with "mental impressions, opinions and conclusions" as "core work product" and declining to require disclosure); *Walker v. White*, No. 16-cv-7024, 2019 WL 1953124, at *6 (N.D. Ill. May 2, 2019) ("[D]isclosure of witness interviews and related documents is particularly discouraged.").

Instead, Plaintiffs argue that there is no work product at issue here because (a) witness names are not "mental impressions or legal communications" protected by the work product doctrine; (b) the interview memoranda and witness list were not created in anticipation of litigation; (c) publication of the Report waived any work product protections that might otherwise have applied; and (d) in any event, Plaintiffs have demonstrated a substantial need for the information sought. Opp. at 11. None of these arguments holds water. As established below, both categories of documents sought fall squarely within the protections of the work product doctrine; publication of the Report, moreover, did not waive any of these protections. The Court for this reason alone should quash the Subpoena.

### A. The Work Product Doctrine Protects Witness Identities.

As an initial matter, and as detailed below, Plaintiffs should not be permitted to improperly invade Perkins Coie's protected work product to obtain witness information. Plaintiffs are fully able to obtain the names of employees and medical personnel that overlapped with Strauss during his time at OSU; Plaintiffs do not need Perkins Coie to provide this information. And Plaintiffs have not asserted, let alone shown, that they cannot obtain a list of Strauss's coworkers—nor have they claimed they even *attempted* to do so prior to subpoenaing a non-party for this information. Plaintiffs cannot undermine important, long-standing legal protections simply to avoid doing their own investigation in support of their lawsuit.

7

Moving from the general to the specific, Plaintiffs' arguments in favor of disclosure lack the required legal support necessary to override such core principles as work-product protections. For example, Plaintiffs baldly assert that witness names are not protected by work product, incorrectly positing that work product protects "only documents and tangible things." Opp. at 15. This misunderstands the applicable law.

The United States Supreme Court and the Sixth Circuit have long held that work product consists of the "tangible ***and intangible*** material which reflects an attorney's efforts at investigating and preparing a case," including the attorney's "pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions*." In re Grand Jury Subpoena Dated Nov. 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980) (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)) (emphasis added). *See also Konecranes Glob. Corp. v. Mode Tech. (Beijing) Co.*, No. 2:19-mc-41, 2020 WL 3265538, at *3 (S.D. Ohio June 17, 2020) (Deavers, J.) ("Mental impressions, thought processes, opinions and legal theories . . . fall squarely under the work-product doctrine."). Here, the list of individuals interviewed is part of Perkins Coie's pattern of investigation, which is protected work product. *In re Grand Jury Subpoena*, 622 F.2d at 935; *see also Abington Emerson Cap. LLC v. Landash Corp.*, No. 2:17-cv-143, 2019 WL 6167085, at *5 (S.D. Ohio Nov. 20, 2019) ("Work product consists of the tangible and intangible material which reflects . . . one's pattern of investigation.").

Plaintiffs' attempt to distinguish *In re Grand Jury Subpoena* on this point is unavailing. In *In re Grand Jury Subpoena*, the Sixth Circuit held that work product creates a "zone of privacy" enabling attorneys to freely "investigate, prepare and analyze a case," which extends to questions such as "who was interviewed." 622 F.2d at 935–36. But contrary to Plaintiffs' suggestion, this holding was not limited to circumstances where the witness list might protect a party from "inculpatory events or transaction." *Id.* Cases in the Sixth Circuit and elsewhere protecting witness lists from disclosure confirm as much. *Cf. Ross v. Abercrombie & Fitch Co.*, No. 2:05-cv-0819, 2008 WL 821059, at *2, *4 (S.D. Ohio Mar. 24, 2008) (denying motion to

8

compel plaintiff to identify which individuals supported particular allegations in the complaint as such information was work product, defendant had access to the "same universe of witnesses," and "[t]he mere fact that counsel may have to do some investigative work to determine which witnesses have knowledge of which relevant facts is clearly insufficient to justify an intrusion into the particulars of how opposing counsel structured their interviews and how much credence they gave to the statements of individual witnesses"); *Advanced Laparoscopic Surgery, PC v. Cynosure, Inc.*, No. 19-10151, 2020 WL 12574966, at *2 (E.D. Mich. Mar. 30, 2020) (denying motion to compel seeking identity of witnesses interviewed by defendant related to litigation because "names of witnesses interviewed by counsel are protected by the work product doctrine" and protecting them from disclosure is "respectful of the sanctity of opinion work product protection"); *Mass. v. First Nat'l Supermarkets, Inc.*, 112 F.R.D 149, 152 (D. Mass. 1986) (noting "the distinction between asking the identity of persons with knowledge, which is clearly permissible, and asking the identity of persons contacted and/or interviewed during an investigation, which is not"); *see also Hammett v. Am. Queen Steamboat Operating Co.*, No. 14-cv-2540, 2015 WL 12805697, at *4 (W.D. Tenn. July 17, 2015) (interrogatories asking for names of witnesses interviewed by counsel "effectively seek disclosure of . . . work product because disclosure of the information would reveal counsel's litigation strategy").

Plaintiffs' reliance on *Baylor* and *Dayco* is similarly misplaced. In *Doe 1 v. Baylor University*, 320 F.R.D. 430, 443 (W.D. Tex. 2017), the court did not hold that witness names are *never* work product; rather, the court held that Baylor had not met its burden to demonstrate that this information reveals attorney work product. Here, under applicable Sixth Circuit and analogous case law, the witness names reflect the pattern of Perkins Coie's investigation. And as the Opposition itself notes (at 17), Perkins Coie's decision not to name certain witnesses/personnel reflects its legal judgment that the investigators could not reach conclusive determinations about some of the witnesses' knowledge.

Likewise, in *In re Dayco Derivative Securities Litigation*, 99 F.R.D. 616 (S.D. Ohio 1983), the court required disclosure of facts upon which allegations in a complaint were based,

including names of witnesses from whom shareholder's counsel obtained information. But a defendant's ability to defend against allegations is not at issue here; rather, Plaintiffs *affirmatively seek* names of witnesses referenced in the Report to obtain largely cumulative evidence of misconduct in support of their claims.

Because the names of non-survivor witnesses are protected from disclosure as work product, the Court should quash the Subpoena with respect to its demand for witness identities.

### B. Perkins Coie's Investigation Was Conducted in Anticipation of Litigation.

Plaintiffs argue (at 10) that witness names and communications are not protected work product because Perkins Coie "did not represent OSU," "provided no legal advice to the University," and conducted an "independent" investigation—and thus Perkins Coie's Report was not prepared in anticipation of litigation. These arguments lack merit and should be rejected.

First, Plaintiffs' argument that Perkins Coie did not provide legal advice *to OSU* misses the point. For starters, Perkins was retained by *the University's* legal counsel, Porter Wright Morris & Arthur LLP ("Porter Wright"), which was acting as special counsel appointed by the Ohio Attorney General. Dkt. 2-1 (Trombino Aff.) ¶¶ 1, 3. Although Plaintiffs fixate on Perkins Coie's "admission" that it did not provide legal advice directly to the University, *see* Opp. at 12, 30, they do not, because they cannot, dispute that *Porter Wright* was acting in anticipation of litigation when it engaged Perkins Coie to conduct its investigation. Supp. Mot. at 2.[5] As discussed in more detail below, moreover, that Perkins Coie's investigation was not directly related to litigation strategy—as evidenced by the separation between the investigation (overseen by OSU's special counsel, Porter Wright) and the litigation (directed by OSU's litigation counsel, Carpenter Lipps)—has no impact on whether the work product doctrine applies.

Next, contrary to Plaintiffs' assertions, Perkins Coie has demonstrated that its interview notes and memoranda,[6] as well as the list of witness names, *were* created in anticipation of

---

[5] Nor do Plaintiffs dispute that the attorney-client privilege applies to agents of attorneys.

[6] Plaintiffs appear to be seeking communications with witnesses as an alternative means of obtaining witness names. But the work product doctrine of course also protects communications between third-party witnesses and Perkins Coie. *See Alvey v. State Farm Fire &*

10

litigation based on the applicable "because of" test for work product adopted by the Sixth Circuit. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (citation omitted). Under this test, the party asserting protection must demonstrate that the document at issue was "prepared or obtained *because of* the prospect of litigation." *Id.* (emphasis added).

Two material factors determine whether work product protections apply: "(1) whether th[e] document was prepared because of a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-cv-807, 2017 WL 1326504, at *14 (S.D. Ohio Apr. 11, 2017) (citation omitted).

This approach is "more inclusive" than the approach requiring a document to be prepared "primarily or exclusively to assist in litigation." 6 Moore's Federal Practice, Civil § 26.70 (2023). For example, under the "because of" test, "[i]f a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection[.]" *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (quoting *Roxworthy*, 457 F.3d at 598–99). Indeed, "[m]any business decisions are made in anticipation of the inevitable litigation," and the "because of" test "offers a more administrable standard, effectively resolving uncertainty at the margins in favor of work product protection." 6 Moore's Federal Practice, Civil § 26.70. Using this test, the Southern District of Ohio has upheld work product protections when documents can "fairly be said to have been prepared because of the prospect of litigation." *Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514, at *27 (S.D. Ohio Nov. 13, 2012).

---

*Cas. Co.*, No. 5:17-CV-00023-TBR-LLK, 2018 WL 826379, at *4 (W.D. Ky. Feb. 9, 2018) (granting motion for protective order and declining to require disclosure of statements obtained from third-party witnesses, among other things); *EEOC v. Koch Meat Co.*, No. 91 C 4715, 1992 WL 332310, at *3–4 (N.D. Ill. Nov. 5, 1992) (finding that counsel's communications with witnesses to gain information for an EEOC questionnaire were protected by the attorney-client privilege and work product doctrine); *Gerber v. Down E. Cmty. Hosp.*, 266 F.R.D. 29, 36 (D. Me. 2010) ("When the work product at issue is interview correspondence for purposes of witness development, that communication *is* the work product.").

Plaintiffs' arguments for a more stringent approach are misplaced, as is their reliance on *In re Professionals Direct Insurance Co.*, 578 F.3d 432 (6th Cir. 2009). The "driving force" doctrine set forth in *In re Professionals* is applicable only if the document has a dual purpose, including, for example, business needs *and* the anticipation of litigation. *Id.* at 439. Here, however, the witness list and communications with witnesses—including Perkins Coie's interview memoranda and notes—were not prepared in the ordinary course of business, and thus did not serve a dual purpose. But even if the records *did* have a dual purpose (they do not), the "driving force" for the creation of such work product was the anticipation of litigation.

Specifically, plaintiff Michael DiSabato was the first, and very public, whistleblower. He, moreover, had already litigated with OSU on other matters. Given the public-facing nature of his serious claims, OSU and its special counsel Porter Wright's expectation of litigation from DiSabato and other student-survivors was objectively reasonable. Although Plaintiffs argue that it is "frivolous" to suggest that Perkins Coie worked "in anticipation of litigation" when Perkins Coie's mandate did not include representing OSU in the litigation that ultimately resulted, Perkins Coie's work product did not need to inform its own—or anyone's—litigation strategy for it to have been created in anticipation of litigation. Similarly, that Perkins Coie's investigation did not ultimately result in Perkins Coie or even Porter Wright serving as counsel of record for OSU in the resulting lawsuits is of no import—its work product is still protected if, as here, it was created in *anticipation* of litigation.

Additionally, Plaintiffs' argument that the Report "would have been prepared in substantially the same manner irrespective of the anticipation" lacks important nuance. Opp. at 20 (citing *Roxworthy*, 547 F.3d at 593–94). Although the former athletes' detailed claims concerning Strauss would have surely triggered an investigation, the deliberate decisions regarding Perkins Coie's methodology, including its "pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions"—all within the "zone of privacy" intended to allow attorneys to freely "investigate, prepare, and analyze a case"—were inherently impacted

12

by the significant risk of future litigation. *In re Grand Jury*, 622 F.2d at 935. As former Perkins Coie partner Caryn Trombino explained in describing the investigation: "Our engagement, our investigative methodology, our internal and external communications, and our work product were all undertaken with those litigation risks at the forefront of our consideration." Dkt. 2-1 ¶ 6. After all, why else would any law firm take these very deliberate, involved, and strategic steps to protect the information from disclosure if not because litigation was anticipated?

Moreover, as also set forth in the Trombino Affidavit—which Plaintiffs failed to rebut—Perkins Coie, in addition to survivor-related litigation, reasonably anticipated defamation and related litigation against the law firm itself, including from the Strauss family and witnesses, as well as litigation from the media seeking access to Perkins Coie's records. Dkt. 2-1 ¶¶ 4–6.

Critically, Plaintiffs do not dispute the well-settled law that "anticipation of litigation" encompasses documents prepared, as here, in anticipation of litigation with someone *other than* the opposing party in the current case. *See* Opp. at 11; *see also* Fed. R. Civ. P. 26(b)(3) (requiring only that the material be prepared in anticipation of *some* litigation, not necessarily in anticipation of *any particular* litigation). Perkins Coie reasonably anticipated that it might be the subject of the aforementioned lawsuits relating to its work on the investigation. Perkins Coie also assisted its only client here (namely, Porter Wright) as *they* formulated legal advice related to threat of litigation and the various allegations. To underscore both points, Perkins Coie from the first day of its work carefully memorialized its highly sensitive witness interviews in notes and coded memoranda to prepare for the realistic, ever-present possibility of litigation emanating from any one of multiple sources.

Nor does the fact that the investigation was independent somehow void the applicable work product protections. Courts have consistently rejected similar unfounded attempts to compel the production of communications with witnesses in independent investigations. *See In re Trasylol Prods. Liability Litig.*, No. 08-1928-MDL, 2009 WL 2575659, at *4 (S.D. Fla. Aug. 12, 2009) (rejecting argument that because defendant had "touted the Report as being conducted by an 'independent' entity, it is barred from using the attorney work-product privilege").

13

Courts have also rejected arguments that factual investigations render the work product doctrine inapplicable. *See In re Woolworth Corp. Sec. Litig.*, No. 94 CIV. 2217 (RO), 1996 WL 306576 (S.D.N.Y. June 7, 1996) (denying motion to compel production of interview notes and memoranda from law firm investigation and rejecting argument that firm "was not retained to render legal advice and that the persons interviewed did not consider [law firm] to be their attorney, nor did they expect [law firm] would hold their statements in confidence").

Finally, "the fact that the documents sought for discovery do not include legal advice is, as a matter of law, irrelevant provided they were prepared in anticipation of litigation." *Fox v. Lackawanna Cnty.*, No. 3:16-CV-1511, 2018 WL 4095854, at *3 (M.D. Pa. Aug. 27, 2018) (rejecting argument that attorney investigator did not provide legal advice).

### C.  Perkins Coie Did Not Waive Applicable Work Product Protections.

Publicly disclosing the Report of Perkins Coie's ultimate factual findings did not waive applicable protections for the substantial work product developed in *preparing* the Report, including names, documents, communications, and/or interview memoranda. In fact, the Southern District of Ohio has previously rejected the broad subject matter waiver Plaintiffs advocate for, especially where, as here, OSU has not injected the Report into the underlying litigation by placing its findings at issue. *See Waters v. Drake*, No. 2:14-cv-1704, 2016 WL 8118193, at *3 (S.D. Ohio Feb. 4, 2016) (denying motion to compel production of privileged documents related to publicly issued report where university did not "voluntarily inject issues about the adequacy of its investigative process into the litigation").

Contrary to Plaintiffs' assertion, the key inquiry for purposes of waiver is not whether OSU's disclosure of the Report was voluntary. Opp. at 23. Rather, "the primary rationale for the rule that voluntary disclosure of some portion of a privileged communication can amount, under some circumstances, to a waiver as to the entire subject matter covered by the communication, is that a party should not be able to use such communications as *both sword and a shield, selectively disclosing* only favorable portions of the communications on that subject and concealing the remainder." *Id.* (emphasis added). Plaintiffs have made no argument that that this

14

is an issue here. Nor could they, since OSU has not relied upon the Report to defend itself in the underlying litigation. In fact, Perkins Coie's investigative findings, as summarized in the Report, *substantiated* the allegations of longstanding abuse that animate the underlying litigation. *See also Jokich v. Rush Univer. Med. Ctr.*, No. 18 C 7885, 2020 WL 1548955, at *3 (N.D. Ill. Apr. 1, 2020) ("If and how the disclosed communication is used is 'critical to the fairness inquiry.'").

Courts across the country have consistently declined to find waiver simply because, as here, a privileged investigation resulted in a public report as to the bare factual findings. *See, e.g.*, *In re Woolworth*, 1996 WL 306576, at *2 ("The mere fact that plaintiffs have so heavily relied upon the Special Report undercuts the contention that Paul, Weiss is using the privilege as a sword and shield."); *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2007 WL 854251, at *5 (E.D. La. Mar. 6, 2007) ("The publication of a final investigative report does not waive the protection for the underlying drafts and materials because the work-product doctrine exists not to protect a 'confidential relationship,' but rather to 'promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent.'"); *In re Trasylol*, 2009 WL 2575659, at *6 (similar); *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 518 (N.D. Ill. 2005) ("Hollinger is not attempting to use the Special Committee counsel's opinion work product as a sword or in order to secure an unfair tactical advantage[.]").

Public policy supports this outcome: courts have long recognized that "[a] finding that publication of an internal investigative report constitutes waiver might well discourage corporations from taking the responsible step of employing outside counsel to conduct an investigation when wrongdoing is suspected." *In re Woolworth*, 1996 WL 306576, at *2.

The cases cited by Plaintiffs are readily distinguishable and do not justify a finding of waiver based on the facts here. In *Doe 1 v. Baylor University*, 320 F.R.D. 430 (W.D. Tex. 2017), for example, the court held that "Baylor cannot release the names of certain individuals who were interviewed and certain data sources and withhold the rest as protected attorney work product," and found that publishing a report with substantial detail about what Baylor and employees told attorney investigators waived the attorney-client privilege. *Id.* at 443. In doing

so, however, the court simply found that Baylor had not met its burden to demonstrate how this information revealed work product. And later, it found that the university *had* (1) injected the report into the underlying litigation and, thus, (2) put its findings at issue. *See, e.g.*, *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 490 (W.D. Tex. June 2, 2020) ("Baylor has repeatedly cited to the Pepper Hamilton investigation and subsequent implementation of reforms to demonstrate that the University was not deliberately indifferent to reports of sexual assault[.]"); *id.* at 493 ("Baylor's proposed defensive case explicitly relies on Pepper Hamilton's work product."). That, as already noted, is clearly not the case here, where OSU's legal defenses to date have relied exclusively on deficiencies in Plaintiffs' complaint and have made no reference to the Perkins Coie Report.

Likewise, Plaintiffs cite *In re OM Group Securities Litigation*, 226 F.R.D. 579 (N.D. Ohio 2005), for the proposition that disclosure of privileged investigation materials waived attorney-client privilege for all documents relating to same subject matter. *OM Group* is also readily distinguishable. In arriving at its conclusion that OM had waived its attorney-client privilege, for example, the court noted that it "must consider[] not only whether there is a tactical benefit, but whether it is fair to uphold the privilege considering the nature of the disclosure." *Id.* at 593. Such an outcome is not warranted here, where the Report provided OSU with no "tactical advantage"—OSU, after all, to the present day *also* does not know the names of the unidentified witnesses. Other courts have recognized this key distinction and have distinguished *OM Group* accordingly. *See, e.g.*, *Ctr. Partners, Ltd. v. Growth Head GP, LLC*, 981 N.E.2d 345, 363 (Ill. 2012) ("The *OM Group* court explicitly declined to decide whether the defendants gained a tactical advantage in litigation through its extrajudicial partial disclosures, instead relying solely on fairness to apply subject matter waiver. The purpose behind subject matter waiver is to prevent the disclosing party from using the privilege as a sword and a shield in litigation.").

Finally, Plaintiffs' reliance on *Graff*, 2012 WL 5495514, at *17, is misplaced. In the portion of *Graff* cited by Plaintiffs, the court found that an audit requested by the company to assess broad, generic compliance with regulatory requirements and company policies was ordinary compliance work in the normal course of business for regulated entities like the

16

defendant and thus not protected by the work product doctrine. In contrast, *Graff* also found that communications relaying factual background to counsel regarding grounds for potential litigation *was* protected work product where there was "more than a remote prospect of future litigation" and "the emails were not prepared in the ordinary course of business, but rather in response to a potential civil action." *Id.* at *27. If anything, *Graff* supports *Perkins Coie*'s position.

**D.      Plaintiffs Cannot Show a "Substantial Need" for Discovery from Perkins Coie**

Providing an additional, separate reason for denying Plaintiffs' request for Perkins Coie's factual work product, Plaintiffs fail to demonstrate the requisite "substantial need" for it under Rule 26(b). To start, it is highly unusual for a litigant to issue a subpoena directly to counsel, as opposed to a party to the litigation, seeking such documents. Such discovery is prohibited "unless it is absolutely necessary." *Richard v. Caliber Homes Loans, Inc.*, No. 2:15-cv-2647, 2016 WL 6573847 (S.D. Ohio Nov. 4, 2016) (Deavers, J.) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). *See also Konecranes*, 2020 WL 3265538, at *3; *Fossyl v. Watson*, No. 1:02cv722, 2006 WL 6403951, at *3 (S.D. Ohio Sept. 5, 2006) (Watson, J.).

Plaintiffs' purported desire to, if necessary, "refresh the recollection" of witnesses—for example, Dr. Ted Grace, *see* Opp. at 28–29—is not, as a matter of law, a need that is sufficiently substantial to override work product protections. *See, e.g.*, *In re Trasylol*, 2009 WL 2575659, at *5 (alleged inconsistent statements of deposition witnesses not sufficient to establish a "substantial need" for investigation interview memos); *In re Woolworth*, 1996 WL 306576, at *3 (holding that witnesses' failure to remember what they told investigators was not a sufficient showing of need, especially where plaintiffs could not demonstrate that the information they seek was not available from any other source); *Walker*, 2019 WL 1953124, at *7 ("[T]he possibility of a faded memory is not sufficient to overcome work-product protection.") (citation omitted).

Moreover, information about OSU witnesses and medical personnel with whom Strauss worked is publicly available and/or can be obtained directly from OSU. Plaintiffs have now *for years* had access to the same documents and employment records that Perkins Coie had access to as part of its investigation. *See In re Vioxx*, 2007 WL 854251, at *6 ("Plaintiffs cannot rely on

[Debevoise] investigation to uncover a 'smoking gun' when they have had access to the same materials by 'other means,' namely in the normal course of discovery."). Tellingly, Plaintiffs opted to not address what, if any, effort they have made to obtain this information direction from OSU or other public data sources. *See Walker*, 2019 WL 1953124, at *7–8 (case was not one of the "rare" cases where substantial need overcame work product protections where defendants "d[id] not address whether they ha[d] made efforts to obtain this information elsewhere or why the substantial equivalent c[ould ]not be obtained without undue hardship").

Plaintiffs' failure to demonstrate a substantial need for the identity of and communications with witnesses, provides an independent basis for quashing their Subpoena.

## IV.     THE ATTORNEY-CLIENT PRIVILEGE ALSO PROVIDES PROTECTIONS FOR WITNESS COMMUNICATIONS AND INTERVIEW MEMORANDA.

Contrary to Plaintiffs' assertion (at 29), the attorney-client privilege, which extends to factual investigations conducted by an attorney, provides additional, independently sufficient protections for Perkins Coie's communications with witnesses, including the resulting interview memoranda.[7] *See generally William Powell Co.*, 2017 WL 1326504, at *14. "[W]hen an attorney is retained to use legal talents and judgment to evaluate the facts she finds during fact investigation conducted for her client, the attorney is doing legal work." *Kennedy v. Zanesville*, No. 2:03-cv-1047, 2006 WL 8442130, at *4 (S.D. Ohio Oct. 20, 2006). Here, Perkins Coie was undisputedly hired to use its legal talents and judgments to evaluate the facts identified during its investigation for its sole client, Porter Wright.[8] Perkins Coie's communications with witnesses interviewed as part of the investigation are squarely protected by the attorney-client privilege.

Plaintiffs are correct that "[w]hen a communication involves both legal and non-legal

---

[7] Contrary to Plaintiffs' assertion (at 27), the attorney-client privilege also extends to emails scheduling meetings and telephone calls that assisted Perkins Coie in providing legal advice. *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010).

[8] Plaintiffs claim that "[i]n a conference with Judge Watson about whether the names of anonymous witnesses should be disclosed, OSU's counsel for Porter Wright represented that OSU did not have the power to effect that disclosure." Opp. at 30. That is a concerning misquote of the transcript. Porter Wright did not say that; rather, *Carpenter Lipps*—OSU's litigation counsel—said it did not have power to effect disclosure of the investigation.

matters, [courts] consider whether the predominant purpose of the communication is to render or solicit legal advice." *Alomari v. Ohio Dep't of Public Safety*, 626 F. App'x 558 (6th Cir. 2015) (citation omitted); *see also Cooey*, 269 F.R.D. at 650 (similar). But the predominant purpose test is not applicable where, as here, witness communications did not "involve[] both legal and non-legal matters." Rather, Perkins Coie's communications with witnesses involved *only* legal matters (that is, the allegations of Strauss' abuse). And even if the predominant purpose test were applicable, as explained above, Plaintiffs ignore that Perkins Coie's client was *Porter Wright*, not OSU, and Plaintiffs do not dispute that Perkins Coie provided legal advice to Porter Wright.

Although Plaintiffs are correct that the Sixth Circuit has not addressed the issue head-on, most sister federal circuit courts *have* extended *Upjohn* to protect certain communications between corporate counsel and former employees. *See, e.g.*, *In re Allen*, 106 F.3d 582, 605–06 (4th Cir. 1997) (analysis applied in *Upjohn* "applies equally to former employees"); *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1493 (9th Cir. 1989) ("the *Upjohn* rationale necessarily extended the privilege to former corporate employees"); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 616, 620, 621 n.4 (7th Cir. 2010) ("the attorney-client privilege applies to the communications made and documents generated during [a factual] investigation" and "every circuit to address this question has concluded that the distinction between present and former employees is irrelevant for purposes of the attorney-client privilege").

And, in any event, courts within the Sixth Circuit have ruled that "communications between a former employee and counsel are privileged [under *Upjohn*] 'if the nature and purpose' of the communications is 'to learn facts . . . that [the former employee] was aware of as a result of her employment.'" *Jacobs v. Alam*, No. 15-10516, 2020 WL 3064435, at *6 (E.D. Mich. June 9, 2020) (citation omitted); *see also Melchior v. Hilite Int'l, Inc.*, No. 13-50177, 2013 WL 2238754, at *2 (E.D. Mich. May 21, 2013) (holding that a witness's status as "a former rather than a current employee makes no difference").

Even courts that otherwise have declined to extend the privilege to former employees recognize the privilege when, for example, "the present-day communication concerns a

confidential matter that was uniquely within the knowledge of the former employee when he worked for the client corporation, such that counsel's communications with his former employee must be cloaked with the privilege in order for meaningful fact-gathering to occur." *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000) (cited in Opp. at 31). Here, the information Perkins Coie sought from former employees necessarily related to what they learned about Strauss' conduct, as well as OSU's knowledge of the same, through their employment.

Finally, unlike the work production doctrine, "there is no substantial need exception to the attorney-client privilege." *Abington Emerson Cap., LLC*, 2019 WL 6167085, at *5. Plaintiffs' request for witness identities and communications from non-party Perkins Coie are neither relevant nor proportional to the underlying needs of the case. Further, complying with them imposes undue burdens on Perkins Coie when Plaintiffs can and should be obtaining the underlying facts directly through party discovery. Yet the Opposition avoids acknowledging Perkins Coie's status as a non-party to the litigation, let alone rebutting that special considerations apply to non-parties. Mot. at 8, 12–14; Supp. Mot. at 11–12.

## V. HISTORICAL OSU DOCUMENTS ARE ALREADY AVAILABLE.

Finally, Plaintiffs seek to improperly "piggyback on the fact-finding investigation of their more diligent counterparts" by seeking all historical OSU documents Perkins Coie collected and uploaded during its privileged and confidential investigation. *Sandra T.E.*, 600 F.3d at 622; Opp. at 32–33. But the documents Plaintiffs seek—which they now define as "OSU records which Perkins Coie uploaded into its electronic discovery database," Opp. at 10—are, as noted, already available to Plaintiffs. Neither Perkins nor OSU has asserted privilege over the voluminous documents referenced in the Report, which are publicly available on the OSU website.[9] To the extent Plaintiffs seek OSU records that are not available online, these records, once again, are available from OSU and should not be sought from Perkins Coie, a non-party in this case.

---

[9] *See* https://news.osu.edu/report-of-the-independent-investigation-into-sexual-abuse-committed-by-dr-richard-strauss/. That Plaintiffs quibble over numbering and would prefer a roadmap does not negate that these documents are publicly available and have been for years.

## CONCLUSION

For the aforementioned reasons, and for the reasons separately set forth in Perkins Coie's Motion to Quash, this Court should grant the Motion in its entirety and quash the Subpoena.


Date: December 8, 2023

Respectfully submitted,

*/s/ Elizabeth A. McNellie*
Elizabeth A. McNellie (0046534)
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215-4138
Telephone: 614.462.2651
Facsimile: 614.462.2616
emcnellie@bakerlaw.com

*Trial Counsel for Perkins Coie LLP*

*/s/ T. Markus Funk*
T. Markus Funk (*pro hac vice*)
Bates McIntyre Larson (*pro hac vice*)
Angela R. Jones (*pro hac vice*)
PERKINS COIE LLP
110 North Wacker Drive, Suite 3400
Chicago, IL 60606-1511
Telephone: 312.324.8400
Facsimile: 312.324.9400
mfunk@perkinscoie.com
blarson@perkinscoie.com
ajones@perkinscoie.com

*Of Counsel for Perkins Coie LLP*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2023, I served the foregoing Non-Party Perkins Coie

LLP's Reply In Support Of Its Motion To Quash Plaintiffs' Subpoena by electronically filing the

pleading using the CM/ECF system, which will send notification of such filing to all counsel of

record.

*/s/ Elizabeth A. McNellie*
Elizabeth A. McNellie (0046534)

*One of the Attorneys for Perkins Coie LLP*
