**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

In re: Subpoena to Perkins Coie LLP, in the
matter of *Steve Snyder-Hill, et al. v. The Ohio
State University* (S.D. Ohio 2:18-cv-00736-
MHW-EPD)

Case No.:  2:19-mc-00038-MHW-EPD

## DECLARATION OF PAULA PAOLETTI

I, Paula Luna Paoletti, hereby declare and state as follows:

1.      I am an attorney licensed to practice law in the state of Ohio, and I am Deputy General Counsel & Senior Associate Vice President for The Ohio State University ("Ohio State" or the "University").  My role as Senior Associate Vice President includes overseeing all litigation involving the University and the Ohio State University Wexner Medical Center.  I have held this position since May 1, 2018.  From August 2012 through April 2018, as Associate Vice President and Senior Associate General Counsel, I oversaw all litigation for the Ohio State University Wexner Medical Center.  I have knowledge of the matters below based on my personal knowledge and on my review of the referenced materials.

2.      This declaration is submitted in support of Ohio State's Response to the Magistrate Judge's January 3, 2024 Order.

3.      The University was first made aware of allegations of improper sexual conduct by former Ohio State physician Dr. Richard Strauss ("Strauss") in late March 2018.  The allegations raised by the first complainant claimed that he and numerous other students (collectively, "Survivors") with whom he was in contact had been sexually abused by Strauss during their time as student-athletes at the University.

EXHIBIT A

4.    Upon receipt of these allegations, members of the University's Office of Legal Affairs ("Legal Affairs") were immediately engaged to evaluate the allegations and advise the University on the proper path forward.

5.    Because of the breadth and scope of the allegations, their potential impact on our students and community, as well as the likelihood of litigation, the University quickly made the decision to engage outside counsel to conduct a thorough and independent investigation into Strauss's conduct at the University.

6.    The threat of litigation was additionally underscored when the first complainant reached out to the University in late March, 2018 seeking to reach a resolution on behalf of himself and other unidentified Survivors and advising that the matter would be referred to the Ohio Attorney General's Office ("AG") if a resolution could not be reached. The fact that the first complainant had previously litigated other matters with the University only served to heighten the prospect of litigation.

7.    Legal Affairs also understood that, in addition to the prospect for civil litigation, the Office for Civil Rights of the United States Department of Education would likely be investigating the University's response to the Strauss allegations, and that the University could be the subject of a federal administrative proceeding based upon its handling of the Strauss matter.

8.    In order to maintain the independence of the investigation, and to provide legal advice to the University on the findings of that investigation as they unfolded, Ohio State through the AG engaged the law firm of Porter, Wright, Morris, and Arthur LLP ("Porter Wright") as special counsel to oversee an independent investigation. Porter Wright had long served as counsel for the University in numerous other lawsuits and litigation matters. Porter

2

Wright was formally engaged by the University through the AG on April 27, 2018.

9.     After a national search, Porter Wright in turn engaged the Perkins Coie firm ("Perkins") to lead the independent investigation, based on Perkins' documented experience conducting complex investigations using trauma-informed, survivor-centered techniques. Perkins was engaged on April 27, 2018.

10.     As Porter Wright was engaged as special counsel and Perkins was engaged to conduct the independent investigation, the University also requested the engagement of special counsel through the AG to represent the University in the anticipated litigation. Carpenter Lipps ("Carpenter Lipps") was engaged on May 2, 2018 to represent the University as trial counsel in any future litigation. The first lawsuit was filed against the University on July 16, 2018.

11.     Perkins was engaged to assess and evaluate allegations raised by complainants against Dr. Strauss (as they relate to the University), and whether the University had knowledge of such allegations.

12.     More specifically, Perkins was engaged to conduct an independent investigation to assess the allegations received by the University, to discover what still-available facts surrounding the allegations existed, and to determine the extent of University personnel's knowledge of Strauss's conduct at that time. The independence of Perkins' investigation was preserved throughout the duration of the investigation and the fact that the investigation was also undertaken in anticipation of litigation, and litigation was filed during the investigation, did not influence or alter Perkins' independence. The Perkins report sets forth the numerous steps that were taken to ensure the independence of its investigation, including the fact that the University was not provided an advance copy of the report.

13. Perkins was advised that the information uncovered during its independent investigation would be shared with Porter Wright and Legal Affairs to assist both in assessing the expected claims, including among things, determining the breadth and extent of Strauss's conduct, the potential number of Survivors and their likely claims, and the extent of University personnel's knowledge of Strauss's conduct. Moreover, Perkins' role was not merely to gather information, but also to apply its legal expertise and experience conducting sensitive and complex trauma-informed, survivor-centered independent investigations to evaluate the facts, assess witness credibility and claims, provide their mental impressions and opinions to the facts they were uncovering, and ultimately to report on Strauss's conduct, University personnel's knowledge of that conduct, and the actions taken by University personnel in connection with that conduct.

14. Throughout the course of its investigation, the Perkins Coie team provided periodic updates to Porter Wright, the University, and the AG's office (these, notably, were one-way communications in the sense that Perkins Coie provided updates on the facts; neither Porter Wright, the University, or the AG's office during these calls – or otherwise – directed or otherwise sought to influence Perkins Coie's investigation). The updates from Perkins Coie both informed the University on the scope, significance, and legal risk and exposure flowing from Dr. Strauss's historical actions and the witnesses' recollections thereof, and concurrently assisted Legal Affairs in advising the University on strategies to address the legal risk.

**I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.**

4

Executed on January 17, 2024.

Paula Luna Paoletti
Senior Associate Vice President &
Deputy General Counsel
Office of Legal Affairs
1590 N. High Street
Suite 500
Columbus, OH 43210