IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

In re: Subpoena to Perkins Coie LLP

Case No. 2:19-mc-00038

Magistrate Judge Elizabeth Preston
Deavers

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FURTHER PROTECTIVE ORDER**

Following the Court's Order dated May 8, 2024 (Dkt. 89, the "May 8 Order"), non-party Perkins Coie LLP produced over 1,500 pages of interview materials, including hundreds of memoranda of interviews its attorneys conducted with potential witnesses as part of the firm's investigation into allegations of persistent, decades-long sexual abuse by a former doctor at The Ohio State University (the "University" or "OSU"). From the outset, Perkins Coie's investigative mandate was to assess the accuracy and scope of the allegations in the most protective, sensitive way possible. Interviewees—who were not obligated to come forward but did so willingly to aid in Perkins Coie's objective truth-seeking mission—were asked about events that occurred decades ago. Predictably, the subject matter of the interviews was exceptionally personal and sometimes involved trauma and pain, even for non-survivor witnesses.

The interview materials memorializing these conversations necessarily contain private information about third parties, the bulk of which has no conceivable relevance to the issues being litigated. Public disclosure of such information risks unnecessary harm and embarrassment to third parties who have voluntarily, and often bravely, assisted with an investigation into sexual abuse allegations and simply wish to go on with their lives. This fact alone warrants a protective order upholding the confidentiality of the designated information.

Plaintiffs now seek the wholesale de-designation of interview memoranda marked confidential under the parties' agreed Protective Order.[1] In an effort to cooperatively meet Plaintiffs' needs without jeopardizing the privacy and security of investigation witnesses, Perkins Coie asked Plaintiffs to identify specifically *who* needs access to these memoranda beyond those who already have it under the current Protective Order. Plaintiffs never responded. Instead, they

---

[1] The agreed Protective Order permits expansive use and disclosure of "Protected Information" within the confines of this litigation. With limited exceptions, confidentiality designations merely prevent Plaintiffs from using or disclosing interview materials outside the litigation. As detailed below, and tellingly, Plaintiffs do not point to a legitimate, litigation-related reason to de-designate interview materials at a stage where discovery has only just begun.

opted to ignore this reasonable inquiry. The only plausible explanation for their silence is because everyone who needs the materials for purposes of litigation already has access. In other words, Plaintiffs' request for wholesale de-designation *has nothing to do with the litigation*.

Accordingly, and consistent with the agreed Protective Order already in place, Perkins Coie moves the Court for a further protective order upholding (1) Perkins Coie's confidentiality designations of the twelve specific interview memos currently being challenged by Plaintiffs, as well as (2) the confidentiality designations on all remaining interview materials, which Plaintiffs have suggested they will dispute pending the Court's ruling on the twelve memoranda at issue.

## **BACKGROUND**

### a.    **Investigation and Subpoena**

In April 2018, Perkins Coie was retained by Special Counsel to OSU, Porter Wright Morris & Arthur LLP ("Porter Wright"), to conduct an independent, thorough, objective, and unbiased investigation into allegations of widespread sexual abuse by former University doctor Richard Strauss going back to the 1970s. The investigation, which was unique in terms of scope and focus, took over a year to complete, during which Perkins Coie interviewed over 500 witnesses. Often at personal risk to themselves, hundreds of witnesses, including former students and current and former University employees, voluntarily stepped forward to support the investigation by providing critical evidence, often in the form of survivor accounts.

Perkins Coie clearly explained to witnesses that it could not provide confidentiality assurances or guarantees given the possibility of a Court order in the context of follow-on litigation. That said, interviewers also often informed witnesses that the firm would do its best to

protect confidentiality to the fullest extent possible.[2]

Perkins Coie issued its final report in May 2019. The report was released to the public without Perkins Coie first sharing the underlying work product pertaining to witness accounts with OSU or Porter Wright. In fact, to safeguard the privacy of survivors and other witnesses, Perkins Coie did not share copies of any interview notes or memoranda outside the firm. Witnesses were also not allowed to review Perkins Coie's interview notes or memoranda and were not asked to sign or otherwise adopt them. Even internally within the firm, Perkins Coie limited access to case information to those who had a demonstrable need to know. For example, attorneys and staff were directed to save investigation materials to a private folder on the firm's server that only approved case team members could access.

Shortly after Perkins Coie's investigation report was published, Plaintiffs served Perkins Coie with a subpoena containing eleven broad discovery requests. Perkins Coie raised objections and moved to quash the subpoena. While the motion to quash was still pending, Perkins Coie and Plaintiffs agreed to a Protective Order (entered on February 22, 2024, *see* Dkt. 85) to allow for the exchange of Perkins Coie's engagement letter with Porter Wright and, more broadly, to prevent the "unnecessary disclosure" of protected information. *See* Protective Order § 2.

Pursuant to the May 8 Order, and in reliance on the Protective Order, Perkins Coie produced records and documents in response to Plaintiffs' subpoena, including hundreds of non-survivor witness interview memoranda and, for some witnesses (at Plaintiffs' request), notes from and substantive communications regarding those interviews. As part of its production, and again in keeping with its concerns about protecting confidentiality, Perkins Coie redacted the names of survivors (except for Plaintiffs who requested through counsel that their names not be

---

[2] For example, one of the interview memos identified by Plaintiffs memorializes such a promise and notes that Perkins Coie would refer to information anonymously in any reports issued. *See, e.g.*, Memo F (subject to *in camera* review by the Court as explained below).

redacted), designated interview materials with identifying survivor information as "Attorneys' Eyes Only," and marked all other memoranda in good faith as "Confidential."

### b. The Protective Order

The Protective Order entered in this subpoena matter is materially identical to the protective order entered in the underlying litigation against OSU. As relevant here, it provides:

> Any party, or any third party subpoenaed by one of the parties, may designate as Confidential and subject to this Protective Order any documents, testimony, written responses, or other materials produced in this case if they contain information that the Producing Entity asserts in good faith is protected from disclosure by statute or common law, including, but not limited to, confidential personal information, medical or psychiatric information, trade secrets, personnel records, or such other sensitive commercial information that is not publicly available. Information that is publicly available may not be designated as Confidential. The designation of materials as Confidential pursuant to the terms of this Protective Order does not mean that the document or other material has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.

Protective Order (Dkt. 85) § 4(a). The recipient of designated material is then limited to using that information "***solely*** for purposes of prosecuting or defending [the ***underlying litigation***]." *Id.* § 6(a) (emphasis added).

The agreed Protective Order also provides a mechanism by which the receiving party can dispute the producing party's designation of a document as protected. *Id.* § 12. Specifically, the parties must meet and confer about the need for confidentiality, consider whether redaction is a viable alternative, and file a motion with the court under Federal Rule of Civil Procedure 26(c) if the dispute cannot be resolved. *Id.*

The Protective Order allows for extensive, litigation-focused use of information designated as confidential, including by permitting its disclosure to eleven categories of persons:

1. outside counsel of record for the parties, and the administrative staff of outside counsel's firms (including, but not limited to, the Ohio Attorney General's Office and its administrative staff);

4

2.   in-house counsel for the parties, and the administrative staff for each in-house counsel;

3.   any party to this Action who is an individual;

4.   as to any part to this action who is not an individual, to the part and those employees, former employees, directors, officers, or manager necessary to further the interest of that party, but only to the extent necessary to further the interest of that party in this litigation including, but not limited to, persons necessary to search for and locate information;

5.   independent consultants or expert witnesses (including partners, associates and employees of the firm which employs such consultant or expert) retained by a party or its attorneys for purposes of this litigation, but only to the extent necessary to further the interest of the parties in this litigation, and only after such persons have completed the certification attached hereto as Attachment A, Acknowledgement of Understanding and Agreement to be Bound;

6.   the Court and its personnel, including, but not limited to, stenographic reporters regularly employed by the Court and stenographic reporters not regularly employed by the Court who are engaged by the Court or the parties during the litigation of this Action;

7.   the authors and the original recipients of documents;

8.   any court reporter or videographer reporting a deposition;

9.   employees of copy services, microfilming or database services, trial support firms, and/or translators who are engaged by the parties during the litigation of this Action;

10.  interviewees, potential witnesses, deponents, hearing or trial witnesses, and any other person, where counsel for a party to this Action in good faith determines the individual should be provided access to such information in order for counsel to more effectively prosecute or defend this Action (as long as the disclosure occurs in the presence of counsel, and copies, duplicates, images, or the like are not removed or retained by any interviewee, potential witness, deponent, or hearing or trial witness), provided, however, that in all such cases the individual to whom disclosure is to be made has been informed that the information contained in the disclosed document(s) is confidential and protected by Court Order, that the individual understands that he/she is prohibited from disclosing any information contained in the documents to anyone; or

11.  any other person agreed to in writing by the parties.

Protective Order § 6(c)(1)–(11).

5

In fact, the agreed Protective Order permits disclosure to *any person* a party's counsel determines in good faith should be provided access "in order for counsel to more effectively ***prosecute or defend*** this action." *Id.* § 6(c)(10) (emphasis added). It also permits disclosure to any other person agreed to in writing by the parties. *Id.* § 6(c)(11).

### c.     Dispute over Confidentiality Designations

On November 15, 2024, as part of the parties' ongoing efforts to meet and confer as provided in the agreed Protective Order, Plaintiffs identified four interview memoranda produced with confidentiality designations that Plaintiffs believed should be de-designated without further redaction. After review, and prior to meeting and conferring via telephone on December 13, 2024, Perkins Coie sent a letter to Plaintiffs reflecting the firm's concerns regarding de-designation. *See* Ex. 1 (12/12/24 Letter).

In its letter and during the subsequent telephonic meet and confer, Perkins Coie explained that (1) it had designated the interview memos in good faith, (2) it had concerns about protecting the safety and privacy of third parties who came forward to provide information, and (3) it did not understand the need to de-designate the interview memoranda at this point in the litigation. Perkins Coie also offered that if Plaintiffs were concerned the Protective Order was not broad enough to allow Plaintiffs to effectively proceed with litigation, there were options beyond unfettered public access that the firm would consider, including stipulating to expand the universe of people who could access and review interview materials under the Protective Order. *See* Protective Order § 6(c) (permitting disclosure to "additional persons . . . stipulated by counsel" and to "any other person agreed to in writing by the parties").

In response, and fatal to their current request, Plaintiffs did not provide any explanation as to why they need to expand use of the documents beyond the limits of the Protective Order.

Accordingly—and consistent with the agreed Protective Order, the case law on public disclosure of pretrial discovery materials, and this Court's May 8 Order[3]—Perkins Coie declined to de-designate any interview materials. Perkins Coie also determined in good faith that redaction on a line-by-line basis was not a viable alternative given the nature of the materials.

On January 16, 2025, Plaintiffs' counsel declared the parties at an impasse and requested that Perkins Coie file the present motion with respect to twelve specific interview memoranda.

### d.    Interview Materials at Issue

Plaintiffs contend that the twelve memoranda they've identified "will give the Court enough context to provide guidance on the Protective Order as applied to the memoranda while reasonably limiting the volume of documents that the Court and counsel need review." Ex. 2 (1/16/25 Email). Perkins Coie disagrees. Even if the Court finds that some or all of these twelve memoranda should be de-designated (they should not), this limited subset is still in no way representative of the broad universe of deeply personal, sensitive information reflected in the hundreds of other witnesses' interview memoranda that Plaintiffs are deliberately *not* challenging (yet). These remaining materials—including the hundreds of memos that Plaintiffs have yet to challenge, along with the underlying rough notes and any substantive communications with witnesses that Perkins Coie has produced—reflect deeply personal recollections from witnesses that warrant just as much, if not more, protection than the twelve strategically selected memoranda at issue here.

To avoid an outcome where a narrow ruling on these twelve memoranda sets a standard with respect to the broader universe of materials, and because the common law allows for a

---

[3] In its May 8 Order, the Court acknowledged potential privacy concerns and contemplated that these would be addressed through an "appropriate protective order." Dkt. 89 at 18 ("[T]he Court will not address Perkins Coie's argument on this issue at this time other than to note that Perkins Coie failed to explain how any potential confidentiality concerns could not be addressed by an appropriate protective order.").

ruling without extensive and voluminous *in camera* review of all memoranda at issue, Perkins Coie seeks a further protective order upholding the applicability of its good faith confidentiality designations during the discovery stage for not just the twelve identified memoranda,[4] but all interview materials currently designated as protected information under the Protective Order.

## LEGAL STANDARD

To properly and appropriately designate material as Confidential under the Protective Order, a designating party need only "assert[] in good faith" that the designated materials "contain information that . . . is protected from disclosure by statute or common law." Protective Order § 4(a). Unless the Court finds the challenged designations were not made in good faith, the Court should not inquire further into the confidentiality designations of the documents at this stage. *See Dow Chem. Co. v. Reinhard*, No. 07-12012-BC, 2008 WL 1931910, at *7 (E.D. Mich. May 2, 2008) (declining to review confidentiality designations where challenging party could not show that designations "were not made in good faith" because "one of the virtues of the stipulated protective order is the discretion accorded to any party to apply these designations to these documents . . . because they are best situated to evaluate the meaning and implication of the content of a given document").[5] When the parties nevertheless disagree about the propriety of confidentiality designations, the Protective Order provides that the designating party must file a

---

[4] Pursuant to the procedures set forth in the agreed Protective Order—which provides that parties may ensure a designated document receives proper protection from public disclosure by, "where appropriate (e.g., in relation to discovery and evidentiary motions) submitting the document solely for in camera review," *see* § 8—Perkins Coie requests the Court's permission to submit the twelve interview memoranda for *in camera* review. To further protect witness confidentiality, cites to these interview memoranda herein are to an assigned letter (e.g., "Memo X"). A table of contents connecting these labels to their respective memoranda will be provided to the Court and opposing counsel with any *in camera* materials for ease of reference.

[5] Unless otherwise noted, all subsequent authority is omitted, internal citations and quotation marks are omitted, internal alterations are cleaned up, and emphases are added.

motion for protective order and show that the disputed information should remain protected pursuant to Federal Rule of Civil Procedure 26(c). Protective Order § 12.

Under Rule 26(c)(1), the Court has authority, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In reviewing a motion for such a protective order, the district court must "balance the interests at issue, and . . . compare the hardship on both parties if the motion is either granted or denied." *State Farm Mut. Auto. Ins. Co. v. Hawkins*, No. 08-10367, 2010 WL 2560494, at *1 (E.D. Mich. June 16, 2010). Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Int'l Union v. Garner*, 102 F.R.D. 108, 117 (M.D. Tenn. 1984).

Protective orders at the discovery stage do not implicate the public's interest in information in court records because discovery materials exchanged between parties are not part of the record. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("Secrecy is fine at the discovery stage, before the material enters the judicial record."). When parties are exchanging information during pretrial discovery that may or may not be relevant to or ultimately used in the litigation, "the 'good cause' standard in Rule 26(c) should not present a substantial hurdle to clear." *AFT Mich. v. Project Veritas*, No. CV 17-13292, 2023 WL 2890152, at *3 (E.D. Mich. Apr. 10, 2023).

In considerable contrast, at the adjudication stage—where discovery materials may actually be used in substantive motion practice or otherwise enter the court record—"very different considerations apply." *Shane Grp.*, 825 F.3d at 305. As courts in this district have recognized, applying at the discovery stage a presumption of openness and access to "every item turned up in the course of litigation" would not only "be unthinkable," it "would impair

9

reputations, ruin relationships, destroy businesses, and . . . potentially taint jurors." *United States v. Sittenfeld*, No. 1:20-CR-142, 2021 WL 1438300 *7 (S.D. Ohio Apr. 15, 2021).

## ARGUMENT

Good cause exists to maintain the confidentiality designations of the interview materials because they all contain sensitive, personal, and/or private information about non-parties to the litigation and are therefore protected from public disclosure by both the express language of the agreed Protective Order and the common law.

**I.     THE INTERVIEW MEMORANDA CONTAIN SENSITIVE PERSONAL INFORMATION ABOUT THIRD PARTIES THAT SHOULD BE PROTECTED FROM PUBLIC DISCLOSURE.**

Even at the adjudication stage, the Sixth Circuit recognizes content-based exceptions to the presumption of openness of court records and filings related to "certain privacy rights of participants or third parties." *Brahmamdam v. TriHealth, Inc.*, No. 1:19-cv-152, 2021 WL 5005368, at *2 (S.D. Ohio Oct. 27, 2021). It is also well established in the common law that courts have the power to protect non-parties from public release of their private and personal information—courts need not permit documents and records exchanged during discovery from being used to promote public scandal or serve as reservoirs for embarrassing press consumption. *See, e.g.*, *Dow Chem. Co.*, 2008 WL 1931910, at *7 (denying motion challenging confidentiality designations and noting that court would not "inquire further into the confidentiality designations of the documents" not filed with the court absent bad faith); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (recognizing trial court's power to deny or restrict access to court files to prevent their use for improper purpose). Indeed, courts "commonly grant[]" protective orders limiting access to documents in order to protect privacy interests of nonparties to the litigation. *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 365 (6th Cir. 1999); *see also Flagg ex rel. Bond v. City of Detroit*, 268 F.R.D. 279, 298, 302 (E.D. Mich. 2010) (denying motion to unseal and

10

noting "case law provides ample support" for protective order to safeguard non-party privacy interests and "heightened public interest in this case does not alter this calculus in any way").

There is ample good cause under Rule 26(c) to uphold confidentiality designations of the interview memoranda in question. The memoranda (as with other interview materials) include personal information of a self-evidently sensitive nature—some of it relevant, some of it irrelevant—that could subject the witnesses to embarrassment or harassment if the information was publicly disclosed. More importantly, in a highly charged and sensitive litigation like this, public disclosure and/or dissemination of witness interview memoranda could jeopardize the safety of individuals who did not themselves participate in the investigation, but about whom the interviewed witnesses nonetheless shared private and sensitive information. At a minimum, upholding confidentiality designations to limit non-litigation use of interview memoranda at the discovery stage will mitigate the potential for online abuse and harassment of not only the witnesses, but also anyone a witness mentioned in their interview.

### a. The interview memoranda include personal information of a sensitive nature that should be protected from unnecessary public disclosure.

Courts in the Sixth Circuit routinely protect from broad public disclosure personal information of a sensitive nature—like the information at issue here—even when that information is relevant to the litigation. For example, courts within the circuit have recognized that information of a sexual, personal, or humiliating nature implicates individual privacy interests and warrants protection from public dissemination. *See Planned Parenthood Sw. Ohio Region v. Hodges*, No. 1:15-CV-00568, 2019 WL 1439669, at *5 (S.D. Ohio Mar. 31, 2019) (denying motion to compel production of patient records that would reveal information about sexuality and sexual choices where redacting identifying information would not sufficiently protect privacy); *Coleman v. Am. Red Cross*, 979 F.2d 1135, 1139 (6th Cir. 1992) (upholding

protective order denying discovery of blood donor's identity to patient who contracted HIV from transfusion). Likewise, courts regularly issue protective orders for discovery materials that contain medical information. *See Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2013 WL 6122399, at *2 (S.D. Ohio Nov. 21, 2013) ("[P]rotective orders are routinely agreed to or imposed by federal courts in cases where sensitive medical information is at issue."); *Martin v. Davis*, No. 2:17-CV-00789, 2018 WL 558950, at *2 (S.D. Ohio Jan. 25, 2018) (requiring parties to treat as confidential "any information related to the medical condition, history and/or treatment of any person identified by the parties as having information relevant to this litigation").

Courts in the Sixth Circuit have also protected discovery materials that, like here, reveal information about an individual's sexuality or gender identity. *See Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:19-CV-00851-BJB-CHL, 2022 WL 1814260, at *4 (W.D. Ky. June 2, 2022). In *Chelsey*, for example, the court found that third party privacy interests in documents containing complaints alleging violations of a local antidiscrimination ordinance constituted a compelling reason for sealing the documents despite the lack of applicable privilege or statutory protection. The documents described incidents that complainants described as personally humiliating and revealed information about their sexuality or gender identity, which is "highly personal" and should be protected from public disclosure. *Id.*

Given the heightened standard applied when sealing a document at the adjudication stage, the *Chelsey* court found that, on balance, redaction sufficiently protected third-party privacy interests in the context of summary judgment. Such an outcome may be appropriate here, too, once the case is at a more advanced litigation stage. But it is not. Here, (1) the merits of the case are not at issue, (2) neither Perkins Coie nor the witnesses whose information is being disclosed are parties to the litigation, (3) the documents at issue may not ultimately be used in litigation,

12

and (4) the case is early in discovery. A showing of good cause is enough for a protective order.

As necessitated by the very nature of an investigation into sexual abuse, all the interviews Perkins Coie conducted involved discussion of sensitive, intimate topics. Some of the interview memoranda identified by Plaintiffs reveal information about non-parties' sexuality or views on sexuality. *See, e.g.*, Memos A, B, E, I, K & L. Several of the memos discuss interviewees either personally witnessing or hearing about sexual activity. *See, e.g.*, Memos K & I. One interviewee shared about multiple instances where they personally witnessed individuals engaging in a variety of sexual activity, and their emotional reactions when that happened. *See* Memo I.

Additionally, multiple memos document interviewees' concerns about being sensitive to issues involving the LGBTQ community in how they responded to certain questions. *See, e.g.*, Memos L, I, B & A. One memo discusses an incident with a faculty member due to a high school student at a summer camp using a homophobic slur, which led to sensitivity training for the interviewee that was entirely unrelated to the investigation or the issues in litigation. Memo I. Some memoranda talk about "gay cruising" habits in athletics spaces on campus, and the interviewees' feelings about such activities. *See, e.g.*, Memos I & K. And other memos detail the interviewees' perceptions of sexuality and recount jokes or rumors about the same. *See, e.g.*, Memos B, A, E, I, L, K & F. For example, one interviewee shared an insensitive joke that was made decades ago and explicitly expressed regret about his past use of the joke. *See* Memo L. Public disclosure of this information would serve no purpose other than to humiliate and embarrass the interviewee for irrelevant, decades-old language.

Additionally, since Strauss was a medical doctor, many memos contain information about interviewees' medical conditions or treatment histories. *See, e.g.*, Memos E & I. For example, one memo discusses the interviewee's rashes, sprains, muscle tears, and other injuries, including

several groin injuries and a genital examination. Memo I. In another memo, a witness discusses treatment for a skin condition. Memo E. And yet another memo describes a time the interviewee accompanied a student to a medical examination and some details of that examination. Memo G.

In short, the interview memos are riddled with highly sensitive, personal information that should be protected from public disclosure at the discovery stage, as shown even in the limited subset of the twelve memoranda identified by Plaintiffs. When individual third-party privacy interests are implicated in discovery materials, like here, those individuals mentioned in the materials will rarely have notice or the ability to prevent the disclosure of their personal information. Likewise, if harmful information is publicly revealed, most individual third parties with only a tangential relationship to the litigation will not have the opportunity to defend or rehabilitate their reputations. *See Flagg*, 268 F.R.D. at 300 (finding good cause to protect deposition that implicated privacy interests and reputations of private individuals who "cannot command an audience with the media to defend their reputations").

Third-party privacy interests implicated in the interview memos are a compelling reason to protect these documents from public dissemination. This case is not at the adjudicative stage and the merits are not at issue here. Perkins Coie need only show there is good cause for the Court to issue a protective order. Good cause exists here.

> **b.** **There is good cause to protect the investigation materials from public disclosure because much of the information that would be revealed is not only personal but is also facially irrelevant to the litigation.**

For sound public policy reasons, courts are even more protective of sensitive personal information where, like much of the information here, it is ***wholly irrelevant*** to the litigation. The rules governing discovery often allow extensive intrusion into the affairs of litigants and third parties alike, and there is opportunity for litigants to obtain discoverable but irrelevant information. Courts frequently protect litigant and third-party information that is not relevant to

the litigation from public disclosure, especially when the information is of a personal or sensitive nature. *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35–36 (1984) ("There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes."); *Ruiz-Bueno*, 2013 WL 6122399, at *3 (blanket protective orders appropriately protect against embarrassment and oppression of unnecessary pretrial public disclosure of private information).

Even the limited interview memos raised by Plaintiffs at this point demonstrate that much of the third-party information is, at best, only tangentially related to this case. The example above about an unrelated incident at a summer camp for high schoolers is a prime example. *See* Memo I. As another example, one memo notes that the interviewee did not remember any of the specific documents he was asked about and did not recall ever meeting Strauss, which the drafting attorney notes in the memo is likely partly due to the witness's advanced age. Memo D. It is unlikely that a memo for an interviewee who has no relevant knowledge will be particularly relevant in litigation. Similarly, information about individual interviewees' medical histories is irrelevant to this litigation. Most of the memos also provide information about the personal background of the interviewee, such as their employment history, job title, or history as a student. *See, e.g.*, Memos E, C, I & H. This personal, potentially sensitive, and largely irrelevant information about witnesses implicates nonparty privacy interests and should be protected from unnecessary public disclosure.

> **c.** **A protective order is necessary to protect the identities of certain nonparty witnesses from public disclosure at the discovery stage.**

The parties agree that protecting the identities of survivors who wish to remain anonymous is critical. But de-designating interview materials as Plaintiffs demand will

meaningfully jeopardize that anonymity. Although Perkins Coie redacted the names of non-Plaintiff survivors when mentioned in the memoranda (which Plaintiffs have not challenged), Perkins Coie did *not* redact most circumstantial identifying information about the survivors—including identifying facts like sport, year, teammates, coach, roommates, and more. Instead, Perkins Coie relied on the agreed Protective Order and marked the interview memos with identifying information as Attorneys' Eyes Only to ensure the anonymous survivors' peers and classmates—let alone the general public—could not piece together their identities. Although the names of survivors would presumably remain redacted if the interview memoranda were de-designated and made public, this other identifying information about the anonymous survivors would be made available for the public to piece together their identities, despite the redactions. This independently constitutes good cause to uphold Perkins Coie's good faith designations of these interview materials under the Protective Order.[6] *See Planned Parenthood Sw. Ohio Region*, 2019 WL 1439669, at *6 (redaction of objectively identifying information not sufficient where it failed to protect sensitive personal and potentially identifying information).

De-designating materials would have the effect of revealing not only the identity of witnesses who were interviewed, but also the identity of witnesses who may not have been interviewed but were named in the interviews. The public disclosure of such information subjects those individuals to potential safety concerns, including, predictably in today's climate, online harassment. Courts in the Sixth Circuit have issued protective orders to protect the identities of third parties accused of violating copyright with their pornography downloads, who were

---

[6] Plaintiffs have not distinguished between memoranda marked Attorneys' Eyes Only and Confidential in requesting wholesale de-designation of the twelve identified memos. Assuming the memos remain protected, if requested, Perkins Coie would be willing to work with Plaintiffs to determine whether it is feasible and reasonable to designate only the portions of those memos with identifying survivor information as Attorneys' Eyes Only and designate the rest of the memoranda as Confidential.

members of a white supremacist hate group, and who were accused of unlawful discrimination. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 21-10041, 2021 WL 625251, at *2 (E.D. Mich. Jan. 29, 2021) (protecting anonymity of ISP subscribers who allegedly infringed in copyright infringement suit related to pornography downloads); *Chelsey Nelson Photography LLC*, 2022 WL 1814260, at *4 (sealing personal identifying information of complainants of and respondents to local anti-discrimination law); *Courier J. v. Marshall*, 828 F.2d 361, 366–67 (6th Cir. 1987) (upholding order protecting the anonymity of non-party KKK members, some of whom were members of local law enforcement, despite the public's interest in their identities).

The interview memos also contain information shared by and about certain individuals that, if publicly disclosed, would predictably cause unnecessary embarrassment and harm to third parties. For example, multiple memos discuss interviewees or other individuals' habits of showering in communal locker rooms decades ago, including some faculty members. *See, e.g.*, Memos E, L F, & I. Public dissemination of this information could be embarrassing and harmful given the context of a lawsuit involving sexual abuse by a man who several interviewees shared *also* had a practice of showering in communal locker rooms and making students uncomfortable.

Courts also grant protective orders when disclosure would have a chilling effect on witness participation in investigations. Internal investigations into reports of misconduct or abuse often rely heavily on witnesses' voluntary cooperation, and "[n]umerous courts in various contexts have recognized the potential chilling effect on complainants and witnesses if internal investigations are disclosed to the public." *Corrado v. N.Y. Unified Ct. Sys.*, No. CV 2012-1748 (DLI) (MDG), 2013 WL 12358468, at *2 (E.D.N.Y. Dec. 10, 2013) (finding good cause to protect as confidential internal investigation reports where witnesses were promised investigation would be kept confidential to extent possible). Those same principles apply here. Perkins Coie

17

conducted an internal investigation into allegations of abuse that relied on witnesses who came forward to assist in uncovering the truth. As in *Corrado*, Perkins Coie informed interviewees that, although it could not provide assurances regarding confidentiality or anonymity, the firm would do its best to protect witness confidentiality to the extent possible. *See, e.g.*, Memo F. Many of these witnesses may not have come forward had they known that their identities or sensitive personal information would, for no good reason, be widely disseminated to the public. Failing to protect these witnesses' confidentiality now could have a chilling effect on future witnesses' willingness to come forward in similar investigations across the country.

Finally, de-designating interview materials at the discovery stage risks harassment and jeopardizes the safety and well-being of those caught up in the storm. For that and other reasons, and especially when a lighting-rod case generates significant media interest, courts have used protective orders to prevent the discovery process from becoming a source for harmful press coverage of sensitive information when there is not a legitimate interest in the information that outweighs the privacy interest implicated by public disclosure. *See Howes v. Ashland Oil, Inc.*, No. 87-5939, 1991 WL 73251, at *2 (6th Cir. May 6, 1991) (unpublished) (trial court explained "I don't want this case so tried in the newspapers that I can't get a jury when the time comes"); *Nixon*, 435 U.S. at 598 (courts are empowered to ensure records are not "used to gratify private spite or promote public scandal" by publication of sensitive information). As this Court has previously acknowledged, such concerns are present here as well. *See* Tr. of Status Conference, Dkt. 91 at 5:7–9 ("I don't want this case tried in the media and I'm tired of finding out about matters involving my case from The Columbus Dispatch.").

Most fundamentally to the dispute at hand, "[d]iscovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public"—and it is

18

the role of the courts to ensure that the discovery process is not used for improper purposes. *AFT Mich.*, 2023 WL 2890152, at *3–4. Protecting the interview materials from unrestricted public disclosure will prevent sensitive witness information from being improperly used by the media to stir up public controversy or fuel scandal at the expense of third parties.

## II.    REDACTION IS NOT A VIABLE ALTERNATIVE, AND PLAINTIFFS HAVE NOT AGREED TO ANY OTHER ALTERNATIVES.

When the parties met and conferred, Perkins Coie indicated that it was open to potentially de-designating specific interview memoranda where appropriate based on the needs of litigation. Perkins Coie also said it was open to expanding the universe of individuals who can access and review the protected interview memos, including by permitting them to be shared with witnesses or deponents to the extent not already permitted under the Protective Order. *See* Ex. 2 (12/13/24 Letter). In response, Plaintiffs suggested that that Perkins Coie could identify and redact any protectable information in lieu of maintaining confidentiality designations. But given the nature of the information Perkins Coie seeks to protect, the language of the agreed Protective Order, and the sensitive personal information throughout the interview memos, line-by-line redaction of any such information is not a feasible solution to the present confidentiality dispute.

Not only would requiring line-by-line redaction place a significant burden on Perkins Coie as a non-party to the litigation to review and redact potentially the entire category of interview memos and underlying materials—over 1,500 pages of produced material—it would leave little left of the original interview memos that could be disclosed. Such significant redactions would result in the functional equivalent of a sealed document. *See Kentucky v. Marathon Petroleum Co. LP*, No. 3:15-CV-354-DJH, 2018 WL 3130945, at *7 (W.D. Ky. June 26, 2018) (granting motion to seal document in entirety where little remained after redaction).

Should the need arise for Plaintiffs to include confidential information in filings with the

Court, Perkins Coie remains committed to engaging with Plaintiffs regarding the specific information to be filed and proceeding as outlined in the Protective Order.[7] This includes the potential for redacting information that will be included in filings. At present, however, Plaintiffs do not, have not tried to, and candidly *cannot* point to any conceivable litigation need to share the information in the interview memos outside the lengthy list of parties already permitted to access confidential information under the agreed Protective Order.

## CONCLUSION

Perkins Coie designated the challenged interview memos in good faith as Confidential or Attorneys Eyes Only and produced them in reliance on the agreed Protective Order because they contain self-evidently sensitive, personal, and private information about third parties, much of which is irrelevant to the issues in litigation. Public disclosure would risk inarguable and unnecessary harm and embarrassment to third parties who voluntarily assisted with uncovering the truth about allegations of sexual abuse. And Plaintiffs have failed to identify any legitimate need to de-designate the interview memos because the agreed Protective Order already permits expansive use and disclosure of Confidential Information *within* the present litigation.

There is good cause for the Court to uphold Perkins Coie's good faith confidentiality designations at this stage in the litigation. Such a ruling, moreover, furthers this Court's expressed interest in preventing this case from turning into a media circus fueled by the personal and highly sensitive information contained in the documents.

For the above reasons, Perkins Coie hereby respectfully moves the Court for a further protective order upholding (1) Perkins Coie's confidentiality designations of the twelve specific

---

[7] The Protective Order provides that when a party seeks to file protected information with the Court, options may include filing a redacted document with the designating party's consent, submitting the document for *in camera* review (where appropriate, e.g., in relation to discovery or evidentiary motions), or, "when the preceding measures are inadequate," moving to file under seal—a process also outlined in the Protective Order. *See* Protective Order § 8.

interview memos currently being challenged by Plaintiffs, as well as (2) the confidentiality designations on all remaining interview materials, which Plaintiffs have suggested they will dispute pending the Court's ruling on the twelve memoranda at issue.

Date: March 14, 2025

Respectfully submitted,

/s/ Elizabeth A. McNellie
Elizabeth A. McNellie (0046534)
Trial Attorney
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215-4138
Telephone: 614.462.2651
Facsimile:  614.462.2616
emcnellie@bakerlaw.com
Counsel for Perkins Coie LLP

OF COUNSEL:

/s/ Bates McIntyre Larson
Bates McIntyre Larson (*pro hac vice*)
T. Markus Funk (*pro hac vice*)
Angela R. Jones (*pro hac vice*)
PERKINS COIE LLP
110 North Wacker Drive, Suite 3400
Chicago, IL 60606-1511
Telephone: 312.324.8400
Facsimile:  312.324.9400
mfunk@perkinscoie.com
blarson@perkinscoie.com
ajones@perkinscoie.com

*Of Counsel for Perkins Coie LLP*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2025, I served the foregoing *Memorandum of Law in Support of Motion for Further Protective Order* by electronically filing the pleading using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Elizabeth A. McNellie*
Elizabeth A. McNellie (0046534)

*One of the Attorneys for Perkins Coie LLP*
